**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1404**

JEFFREY S. BROWNING, as Trustee of the Browning Equipment, Inc. 401(k) Profit Sharing Plan,

       Plaintiff - Appellant,

    v.

TIGER'S EYE BENEFITS CONSULTING; THEODORE G. REEDER, III, C.P.A.; DAVID M. DUKICH,

       Defendants – Appellees,

    and

POTOMAC ASSET MANAGEMENT GROUP, LLC,

       Defendant.

--------------------

JOHN J. KORZEN,

       Amicus Supporting Appellee David M. Dukich.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:05-cv-303-CMH)

Argued: October 28, 2008       Decided: February 26, 2009

Before NIEMEYER and MICHAEL, Circuit Judges, and Richard D. BENNETT, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion.    Judge Bennett wrote the opinion, in which Judge Niemeyer and Judge Michael joined.

---

**ARGUED:** Richard Dennis Carter, Alexandria, Virginia, for Appellant.    Patrick John Kearney, SELZER, GURVITCH, RABIN & OBENCY, CHTD., Bethesda, Maryland; Jenelle Neubecker, WAKE FOREST UNIVERSITY, School of Law, Appellate Advocacy Clinic, Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** John J. Korzen, Elizabeth H. Asplund, Amber Burleson, Lauren T. Millovitsch, WAKE FOREST UNIVERSITY, School of Law, Appellate Advocacy Clinic, Winston-Salem, North Carolina, Amicus Counsel for Appellee David M. Dukich.

---

Unpublished opinions are not binding precedent in this circuit.

BENNETT, District Judge:

Appellant Jeffrey S. Browning, as Trustee of the Browning Equipment, Inc. 401(k) Profit Sharing Plan, appeals the entry of summary judgment by the district court in favor of the Appellees, Tiger's Eye Benefits Consulting, Theodore G. Reeder, III, and David Dukich. The district court entered summary judgment on alternative grounds: first, the district court found as a matter of law that the Appellees were not fiduciaries under section 409(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) ("ERISA"); and, second, the district court found that the Appellees were entitled to summary judgment because ERISA's three-year statute of limitations had expired before the suit was brought. Because we agree as to the latter ground, the judgment below is affirmed.

I.

Browning Equipment, a small, family-owned tractor sales and services company, maintains the Browning Equipment, Inc. 401(k) Profit Sharing Plan ("the Plan"). At the time this suit commenced, Appellant Jeffrey S. Browning ("Browning") was a Trustee of the Plan, as were Jean Copeland and Reyburn Browning, Jeffrey Browning's father. Under the Plan, the Trustees had

3

"the sole responsibility of the management of the assets held under the Trust." (J.A. 451.)

Theodore Reeder is a certified public accountant and the sole shareholder of Tiger's Eye Benefits Consulting, a business that provided third-party consulting services to the Plan beginning in 1994. Prior to 1994, the Plan had been a client to Reeder's former employer since 1984. The Plan engaged Tiger's Eye through annual letters which provided that "Tiger's Eye Benefits Consulting will be a third party plan administrative consultant only, and will not act in the capacity of the Plan's 'ERISA Administrator.'" (J.A. 163-172.)

Between 1979 and 1999, most of the Plan's assets were invested in a fixed annuity insurance contract with Royal Maccabees Life Insurance Company. Between 1997 and 1999, Reeder began communicating with Reyburn Browning about reinvesting its assets elsewhere. In April 1999, Reeder met with David Dukich, a broker based in Frederick, Maryland who was selling investments in U.S. Capital Funding, Inc. Dukich was promising a return of 9.25% on a 180-day investment with U.S. Capital Funding. Relying on the information given to him by Dukich, Reeder recommended to Reyburn Browning in a letter dated April 20, 1999 that the Trustees invest $300,000 with U.S. Capital Funding and $150,000 with John Hancock. Reeder told Reyburn

4

Browning that the U.S. Capital Funding investment was insured up to $2,000,000 through CNA Insurance Companies.

Sometime between April 20 and April 26, 1999, Reeder introduced Dukich to the Trustees. At the meeting, the Trustees questioned Reeder and Dukich about the investment with U.S. Capital Funding and received positive responses, including that the investment was insured. On April 26, 1999, the Trustees invested $555,000 with U.S. Capital Funding. In return, the Plan received a promissory note bearing a 9.25% rate of return, payable in 180 days from April 27, 1999. The note did not contain an automatic reinvestment or renewal provision. Dukich received a 9% commission, half of which was actually paid to him. Reeder received a 1% commission from Dukich.

For the first few months, the Plan received information about its investment directly from U.S. Capital Funding, including monthly interest statements and a Form 1099. Jeffrey Browning testified that, to his knowledge, none of the Trustees ever expressly authorized the renewal of the U.S. Capital Funding investment. Nonetheless, the Trustees did not receive payment when the note became due in October 1999, and there is no evidence suggesting that the Trustees inquired as to why payment was not received. Also in October 1999, the Plan stopped receiving monthly interest statements from U.S. Capital

5

Funding, and the record does not contain any evidence that the Trustees acted to determine the reason that the statements stopped arriving.

Dukich first learned that U.S. Capital Funding was not paying funds to clients sometime in fall 2000. At that time, Dukich was told that U.S. Capital Funding would not be paying noteholders because of difficulty receiving funds from the companies with which it was doing business. On February 20, 2001, Reeder informed the Trustees via letter that the assets were temporarily unavailable and that litigation was currently being pursued to "free up the monies." (J.A. 348-49.) Reeder also assured the Trustees that the "original investment is guaranteed through [the CNA] insurance arrangement" and that "interest earnings would be separately recoverable." (Id.)

Then, on July 23, 2001, Reeder explained to the Trustees, again by letter, that the 180-day investment was locked into five-year notes. (J.A. 350.) He also explained "it was his understanding" that U.S. Capital Funding initiated legal proceedings in Florida in order to release invested funds. (Id.) Consequently, Reeder advised the Trustees as follows: "Although it is a difficult position to take, my suggestion continues to be to wait on the legal actions pending . . . for

6

an ultimate resolution and release of monies invested through the Browning Equipment Inc. Profit Sharing Plan." (J.A. 351.)

Sometime in early November 2001, Browning had "the need to find out what the story was on the insurance" because "the doubt started to creep in our minds about the – you know, where the funds were." (J.A. 149.) On November 15, 2001, in response to a request from Browning, Reeder sent a fax transmission to Browning. Reeder acknowledged on the cover sheet that, "although [Dukich] has made reference to me previously of an insurance company 'declaration page,'" Reeder had not yet received the document. Thus, as Browning testified, Reeder's fax contained "nothing worthwhile" demonstrating that the U.S. Capital Funding investment was insured. (J.A. 148.)

On February 19, 2002, the Trustees were explicitly informed by Reeder that a court-appointed receiver was in place to "coordinate the ongoing activity of U.S. Capital Funding, Inc." (J.A. 371-72.) By this time, the Plan had not received payment on the U.S. Capital Funding note since March 22, 2000, when it received its first and only payment in the amount of $25,317.12. In a letter received by the Trustees on March 24, 2003, Reeder, who is not an attorney, informed them that legal proceedings were ongoing and that any legal action taken by the Trustees themselves would not accelerate recovery. (J.A. 359.) He

7

added, however, that "I fully understand any actions that you feel compelled to take in fulfilling your duties as . . . Trustees." (Id.)

Tragically, the problems associated with the Plan's investment in U.S. Capital Funding were dire. We have previously noted that the U.S. Capital Funding was, "in reality, a Ponzi scheme." Smith v. Continental Ins., 118 Fed. Appx. 683, 683 (4th Cir. 2004). The Plan's investment was all but lost.

Browning filed the underlying complaint on March 18, 2005, asserting breach of fiduciary duty and prohibited transaction claims under ERISA (Counts I and II), as well as a state law tort claim (Count III). Without separately discussing the individual claims asserted by Browning, the district court granted summary judgment in Appellees' favor on alternative grounds: first, the district court concluded that Reeder and Dukich were not fiduciaries of the Plan; and, second, the district court concluded that the statute of limitations had expired prior to Browning filing suit.

## II.

The district court's entry of summary judgment is reviewed de novo, with the facts and the inferences from those facts taken in a light most favorable to the nonmovant. See EEOC v.

8

Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Although Browning appeals both grounds asserted by the district court to grant summary judgment for Appellees, we discuss only the latter ground because, assuming that Appellees were fiduciaries to the Plan, Browning's failure to timely file suit under ERISA's three-year statute of limitations necessarily bars both ERISA claims. Additionally, although the district court did not specifically discuss Browning's state law claim, the record is sufficiently developed for us to conclude that it is barred by Virginia's statute of limitations.

A.

Browning's breach of fiduciary duty and prohibited transaction claims are subject to the statute of limitations framework provided in ERISA § 413, 29 U.S.C. § 1113. Section 413 provides that a claim for breach of fiduciary duty may not commence after the earlier of:

9

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Thus, section 413 "creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996).

Prior to 1987, section 413's three year statute of limitations was triggered by either actual knowledge or constructive knowledge. Congress amended the statute in 1987 to require, at a minimum, "actual knowledge of the breach or violation." See Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1085 n.6 (7th Cir. 1992) (explaining that "[b]efore it was amended in 1987, [29 U.S.C. § 1113] contained a constructive knowledge provision, stating that the three-year limitations period began when a plaintiff 'could reasonably be expected to have obtained knowledge' from certain reports filed

10

with the Secretary of Labor" (citing removed statutory language)).  Since the 1987 amendment, the circuits that have defined what constitutes actual knowledge have reached somewhat divergent results.

The Third and Fifth Circuits' narrow interpretation of actual knowledge in section 413 "requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA."  Int'l Union v. Murata Erie N. Am., Inc., 980 F.2d 889, 900 (3d Cir. 1992); see also Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992); Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir. 1995) (applying the Third Circuit test).  Other circuits, including the Sixth, Seventh, Ninth, and Eleventh Circuits, require only that the plaintiff have "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute."  Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003); see also Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992); Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985); Brock v. Nellis, 809 F.2d 753,

11

755 (11th Cir. 1987).  The remaining circuits that have settled on a definition fall somewhere between these two views.[1]  See, e.g., Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001) (holding that a "plaintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act").

Although this Court has not had occasion to precisely define "actual knowledge of the breach or violation" under section 413(2),[2] we need not settle on a hard and fast definition

_____

[1] Ironically enough, there appears to be some disagreement as to whether there is even a circuit split on the definition of actual knowledge.  The Sixth Circuit specifically explained that "courts are divided on the issue of what constitutes 'actual knowledge' under § 1113(2)."  Wright 349 F.3d at 328.  In Edes v. Verizon Commc'ns, Inc., 417 F.3d 133 (1st Cir. 2005), however, the First Circuit refused to acknowledge that there was a circuit split, instead finding that the respective positions of the circuits are "more nuanced" and the differences "exaggerated."  Id. at 141.
[2] We have previously stated that the three-year limitations period "begins to run when a plaintiff has knowledge of the alleged breach of a responsibility, duty, or obligation by a fiduciary."  Shofer v. Hack Co., 970 F.2d 1316, 1318 (4th Cir. 1992).  In Shofer, however, there was no dispute between the parties that the three-year limitations applied and had expired when suit was filed.  The issue in Shofer was whether filing an earlier suit in Maryland state court based on the same facts equitably tolled the running of the three-year statute of limitations under federal tolling principles.  Thus, Shofer did
(Continued)

12

in the instant case. Based on the statutory amendment in 1987, it is plainly apparent that "actual knowledge must be distinguished from constructive knowledge." Martin, 966 F.2d at 1086. The point in which one has "actual knowledge of the breach or violation," as opposed to constructive knowledge, in turn depends largely on the "complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation." Id. We also agree with the First Circuit that "[t]he amendment to ERISA § 413 means that knowledge of *facts* cannot be attributed to plaintiffs who have no actual knowledge of them," and that "there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'the essential facts of the transaction or conduct constituting the violation.'" Edes, 417 F.3d at 142 (emphasis in original) (citing Martin, 966 F.2d at 1086). Thus, the appropriate inquiry is fact-intensive and, on the facts before us, we have little difficulty finding that the Trustees had the requisite factual knowledge to trigger the three-year statute of limitations under section 413(2).

─────────────────────

not examine the meaning of "actual knowledge of the breach or violation."

Browning's ERISA claims are based on allegations that Appellees failed to render advice in the best interest of the plan, failed to diversify funds, failed to adequately investigate the U.S. Capital Funding investment, and invested the Plan's assets for their own benefit. The district court determined that the Trustees "knew or should have known of the problems with the Note in February 2002 because Reeder wrote to inform them that a receiver had been appointed for U.S. Capital Funding." (J.A. 538.) Although it is not clear whether the district court applied an actual or constructive notice requirement,[3] we conclude that, by February 19, 2002, the Trustees had actual knowledge of enough sufficient facts relied upon in their legal claims to trigger the three-year limitations period. On February 19, 2002, the Trustees were unambiguously informed that the Plan's $555,000 investment was placed in court-appointed receivership. On that date, the Trustees undoubtedly had "knowledge of [the] transaction's harmful consequences," as well as notice of "actual harm." Gluck, 960 F.2d at 1177.

---

[3] Because of the amendment to 29 U.S.C. § 1113, the three-year statute of limitations did not begin to run on the date that the Trustees *should* have known about facts establishing a breach or violation. It began to run only when they had actual knowledge of the facts.

14

Although this fact alone convinces us that the Trustees had actual knowledge of the breach or violation, the record reveals that the Trustees also had direct, first-hand knowledge of other facts by February 19, 2002, making their ERISA claim patently clear by then. For example, the Trustees were fully aware that their investment was not diversified on April 26, 1999, the date they first purchased the promissory note. By investing the entire liquid portion of the Plan's funds with U.S. Capital Funding, the Trustees did not accept Reeder's advice to invest a lesser amount with U.S. Capital Funding with the balance invested elsewhere.

Moreover, the Trustees had actual knowledge of facts demonstrating that the Plan's money was not invested in an insured, 180-day promissory note, as they originally believed to be the case. Although the Trustees knew that the note was payable in 180 days and did not contain an automatic reinvestment or renewal provision, the Plan was not paid after 180 days and the Trustees did not receive a single monthly interest statements from U.S. Capital Funding after October 1999. By late 2000, the Trustees were informed that U.S. Capital Funding was not paying noteholders upon maturity of the note, and the Trustees were further informed in February 2001 that litigation involving U.S. Capital Funding had already

15

ensued. On July 23, 2001, the Trustees were told that their initial 180-day investment was apparently "locked into five-year notes." Finally, in November 2001, Browning, concerned about the lack of insurance of the Plan's investment, requested documents from Reeder but received nothing in return to assuage his concerns. By that point, the Trustees had not received a single document indicating that the Plan's investment was in fact insured.

Because we do not believe that the nature of the transaction was overly factually complex (it involved the purchase of only a single promissory note), and because the alleged breach by the Appellees is quite egregious (the entire purchase price of $555,000 was unrecoverable), see Martin, 966 F.2d at 1086, we conclude that the aforementioned facts taken together more than establish that the Trustees had actual knowledge under 29 U.S.C. § 1113 no later than February 19, 2002. Thus, assuming that the Appellees were in fact fiduciaries (an issue we need not reach), the three-year statute of limitations ran on February 19, 2005. Consequently, Browning's lawsuit, filed on March 18, 2005, was time barred.

16

Browning's fallback position is that the six-year "fraud or concealment" period applies to his ERISA claims, rather than the three-year "actual knowledge of the breach or violation" period. The district court did not address this argument in its memorandum opinion, but implicitly rejected it by granting Appellees' motion for summary judgment.

If applicable, the "fraud or concealment" provision extends the statute of limitations period to six years beginning on the date of discovery. As relevant here, the six-year "fraud or concealment" provision also encompasses at a minimum the "fraudulent concealment doctrine," which applies when the defendant acts to prevent or delay the plaintiff's discovery of the breach.[4]  See, e.g., Caputo, 267 F.3d at 188.  Rooted in federal common law, the fraudulent concealment doctrine tolls the statute of limitations "until the plaintiff in the exercise

---

[4] The Second Circuit in Caputo interpreted the "fraud or concealment" provision in 29 U.S.C. § 1113 as independently including both fraud and fraudulent concealment claims. See Caputo, 267 F.3d at 190 (interpreting "fraud or concealment" as "fraud or [fraudulent] concealment").  This appears to be the minority view.  Id. at 188-89 (citing six Unites States Courts of Appeal—i.e. the First, Third, Seventh, Eighth, Ninth, and D.C. Circuits—that have interpreted "fraud or concealment" as synonymous with "fraudulent concealment").  We have not been asked to address this issue, however, as Browning "do[es] not claim that [Reeder and Dukich] committed fraud by false representations or omissions."  (App. Reply 10.)

of reasonable diligence discovered or should have discovered the alleged fraud or concealment." J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996) (citing Larson v. Northrop Corp., 21 F.3d 1164, 1172-74 (D.C. Cir. 1994)). We conclude that the fraudulent concealment doctrine is inapplicable in this case.

The fraudulent concealment doctrine does not apply here for the simple reason that we find nothing in the record demonstrating that the Trustees were prevented from discovering the breach or violation as a result of concealment by Appellees. The fraudulent concealment doctrine "requires the plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." Larson, 21 F.3d at 1172. Thus, the fraudulent concealment doctrine does not trigger the six-year limitations period under 29 U.S.C. § 1113 if the concealing act does not delay actual or constructive notice of the fiduciary's wrongdoing.

In this case, Browning contends that Reeder and Dukich fraudulently concealed their breach of fiduciary duty "by assuring the Plan that [Dukich] was protecting their legal rights and by discouraging them from otherwise seeking

18

independent legal advice." (App. Reply 10.) Thus, Browning's argument is tied to the fact that the Trustees were advised by letter in July 2001 and again in March 2003 that they should withhold legal action.

However, notwithstanding the July 2001 letter's advice regarding counsel, the Trustees had already accumulated significant indicia of a viable claim against Appellees. In fact, the July 2001 letter explained a component of the alleged breach, as it stated that the 180-day investment was locked into five-year notes. Thus, the July 2001 letter itself did not prevent or delay the plaintiff's discovery of the breach. And on February 19, 2002, well before the March 2003 letter was sent, the Trustees were unambiguously informed that the Plan's $555,000 investment was placed in court-appointed receivership. At that time, the Trustees not only had "actual knowledge of a breach or violation" under section 413(2), but, by necessary implication, they also had clearly discovered the breach or violation that formed the basis of their suit. Thus, "[t]he claim, such as it was, lay bare for the world to see." Kurz, 96 F.3d at 1552.

In sum, the July 2001 letter therefore did not delay discovery of the "breach or violation" because, regardless of the letter, the Trustees were well aware of Appellees'

19

wrongdoing by February 19, 2002. Further, because the three-year limitations period was triggered at that time, the March 2003 letter certainly had no effect on the Trustees' discovery of the breach or violation.

## C.

Lastly, we turn to Browning's state law professional malpractice claim, which alleges that Appellees negligently provided investment advice to the Trustees. The record in this case amply supports the district court's dismissal of the claim. Under Virginia law, a claim for professional negligence, although sounding in tort, is considered an action for breach of contract for purposes of the statute of limitations because the legal claim is grounded in contract law. See Virginia Military Institute v. King, 232 S.E.2d 895, 899-900 (Va. 1977). Under Virginia law, the statute of limitations for contract claims is five years for contracts in writing, and three years for oral contracts. Va. Code Ann. § 8.01-46. The statute of limitations accrues on the date of breach, not the date of the resulting damage is discovered. Id. § 8.01-230.

Here, Browning's malpractice claim is based entirely on the Appellees' recommendation to purchase the U.S. Capital Funding investment. Browning's argument is that the Appellees "recommended that the Trustees invest 'a larger portion' of the

20

Plan's assets" with U.S. Capital Funding.    (App. Brief 38.)

Even assuming that the professional relationship between the

parties was based in contract (which appears to be the case),

the lengthier five-year limitations period provided under

Virginia law still bars this claim.    Based on Appellees'

recommendations, the Trustees purchased the U.S. Capital Funding

note on April 26, 1999, more than five years and eleven months

before this action was filed on March 18, 2005.[5]    Therefore, the

state law professional malpractice claim is also barred by the

statute of limitations.


III.

The district court did not err in granting summary judgment

to Appellees on the grounds that Browning's action was barred by

---

[5] Equitable estoppel principles do not save Browning in this case.    Based on Virginia statutory and case law, we have held that the "statute of limitations is tolled until a person intentionally misled by a putative defendant could reasonably discover the wrongdoing and bring action to redress it." FDIC v. Cocke, 7 F.3d 396, 402 (4th Cir. 1993).    As discussed at length earlier, we find that the Trustees discovered the wrongdoing on February 19, 2002, when they learned that the Plan's $555,000 investment was placed in court-appointed receivership.    The July 2001 letter advising the Trustees to forgo legal action was sent seven months before they had actual knowledge.    Thus, even if equitable estoppel principles tolled the running of the statute of limitations for this seven-month period, Browning's action was still filed four months late.

the statute of limitations.  Consequently, the judgment of the

district court is

AFFIRMED.