# HAMPTON ROADS SANITATION DISTRICT

## V.

# JERRY F. McDONNELL

Record No. 841240

October 9, 1987

Present: All the Justices

*Joseph J. Lawler (Kellam, Pickrell & Lawler*, on brief), for appellant.

*Walter B. Martin, Jr. (Vandeventer, Black, Meredith & Martin*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This appeal presents questions relating to sovereign immunity, limitation of action, and sufficiency of the evidence to establish trespass and damages.

Jerry F. McDonnell sued Hampton Roads Sanitation District (Hampton Roads) in an action at law to recover a money judgment for damage to his land caused by Hampton Roads. In his motion for judgment, McDonnell alleged that Hampton Roads had discharged sewage and other pollutants onto his land. The case was tried to a jury, which returned a verdict in favor of McDonnell for $100,000 as compensatory damages and $30,000 as punitive damages. The trial court set aside the verdict as it related to punitive damages,[1] but entered judgment for McDonnell for $100,000 in accordance with the verdict for compensatory damages. Hampton Roads appeals.

---

[1] McDonnell has assigned no cross-error to this ruling.

Hampton Roads, a political subdivision of the Commonwealth with the power of eminent domain, owns and operates a sewerage system in conjunction with the sewerage systems of various cities and counties in the Tidewater area. Hampton Roads receives wastewater from various cities and counties, transmits the wastewater to its treatment plants, treats the wastewater, and discharges the treated effluent into various bodies of water.

McDonnell is the owner of a tract of land in the City of Virginia Beach (the City), bounded by Baltic and Arctic Avenues and 27th and 29th Streets. He purchased the land in 1980 at a price of $300,000. A major portion of the land is a marsh.

A pump station owned and operated by Hampton Roads is located near McDonnell's land. The pump station receives sewage from the City's system and pumps it into Hampton Roads' system. Under normal conditions, the flow from the City's system passes into and through the pump station. When the flow reaches approximately three times the normal quantity, however, the pump station cannot accommodate the wastewater. In such a situation, a bypass valve opens, diverting the overflow from the pump station and discharging the wastewater upon McDonnell's property. Hampton Roads' general manager testified that "[t]he pump station was constructed [in 1969] specifically to allow [wastewater] to bypass" onto the land now owned by McDonnell.

According to Hampton Roads' records, over two million gallons of wastewater were discharged onto McDonnell's land from December 1980 through October 1981. The effluent contained raw sewage and other pollutants.

The first question presented is whether McDonnell's suit is a tort action from which Hampton Roads is immune. In contending that the doctrine of sovereign immunity applies, Hampton Roads asserts that it was performing an essential governmental function and therefore is immune from any suit predicated on tort liability. Hampton Roads claims that McDonnell's suit was tried and decided on the theory that Hampton Roads had trespassed upon McDonnell's land. It argues that the present case is controlled by *Tunnel District* v. *Beecher*, 202 Va. 452, 117 S.E.2d 685 (1961).

McDonnell does not contest Hampton Roads' assertion that it was performing an essential governmental function; nevertheless, he denies that Hampton Roads is immune from his claim of compensation. He contends that because Hampton Roads acted intentionally in discharging sewage onto his property, the doctrine of

sovereign immunity does not apply. McDonnell relies upon *Morris v. Tunnel District*, 203 Va. 196, 123 S.E.2d 398 (1962).

In *Beecher*, the plaintiff obtained a judgment against the Tunnel District for personal injuries she received while boarding a bus owned and operated by the District. Beecher based her action on the District's negligent operation of the bus. We reversed the judgment of the trial court and held that because the District was performing an essential governmental function it was immune from any action based on tort liability.

In *Morris*, the plaintiff alleged that the Tunnel District damaged her real property during the construction of a tunnel under the Elizabeth River. In *Morris*, as in the similar case of *Heldt v. Tunnel District*, 196 Va. 477, 84 S.E.2d 511 (1954), we held that the District was not immune from suit because § 58 (now art. I, § 11) of the Constitution of Virginia " 'guarantee[s] to an owner just compensation both where his property is *taken* for public uses and where it is *damaged* for public uses, irrespective of whether there be negligence in the taking or the damage.' " *Morris*, 203 Va. at 198, 123 S.E.2d at 400, *quoting Heldt*, 196 Va. at 482, 84 S.E.2d at 514 (emphasis in original). Additionally, *Morris* and *Heldt* instruct that the constitutional provision is self-executing and that a landowner may enforce his right to compensation in a common-law action.[2] *Morris*, 203 Va. at 198, 123 S.E.2d at 400; *Heldt*, 196 Va. at 482, 84 S.E.2d at 515.

The plaintiffs in *Morris* and *Heldt*, unlike the plaintiff in *Beecher*, claimed that their real properties were damaged in violation of the Constitution of Virginia. *Beecher* involved an action for personal injury, not a claim for damage to real property. Moreover, in *Beecher* the constitutional issue was neither raised nor addressed.

The present case, like *Morris* and *Heldt*, is an action brought to recover compensation for damage to private property resulting from the operation of a government facility for public uses and purposes. The undisputed evidence established that Hampton Roads intentionally discharged sewage on McDonnell's property. Indeed, its system was designed so that a valve would permit such

---

[2] In *Chaffinch v. C & P Tel. Co.*, 227 Va. 68, 71-72, 313 S.E.2d 376, 378 (1984), we noted that Code § 8.01-187 (former Code § 8-581.1), enacted subsequent to the decisions in *Morris* and *Heldt*, now may provide the exclusive remedy for art. I, § 11 claims asserted against the sovereign, its agencies and political subdivisions. The question, however, is not before us in this appeal.

discharge when the flow became excessive. Under the facts presented, we hold that Hampton Roads is not immune from McDonnell's constitutionally mandated right to compensation.

■ Hampton Roads also contends that McDonnell's claim is barred by Code § 8.01-243(B), which provides that "[e]very action for injury to property . . . shall be brought within five years next after the cause of action shall have accrued." Hampton Roads asserts that McDonnell's cause of action accrued "in 1969 when the bypasses from the . . . Pump Station began." McDonnell counters with the contention that he is entitled to seek recovery for the damage to his property caused by each discharge of sewage. Adopting McDonnell's contention, the trial court ruled that "each discharge was a separate actionable event" for which McDonnell was entitled to seek recovery "during the 5 years preceding the filing of suit." We agree.

■ If the wrongful act is of a permanent nature and one that produces "all the damage which can ever result from it, [then] the entire damages must be recovered in one action," and the statute of limitations begins to run from the date of the wrongful act. *Norfolk & W. R. Co.* v. *Allen*, 118 Va. 428, 435, 87 S.E. 558, 560 (1916), *aff'g on rehearing*, 118 Va. 428, 87 S.E. 558 (1915) (citations omitted). Conversely, when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action. *See id.* at 432-33, 87 S.E. at 559. In the latter situation, a plaintiff's "right of recovery . . . is limited by the statute to the damages sustained during the five years immediately preceding the institution of [the] suit." *Id.* at 433, 87 S.E. at 559.

■ In the present case, the original discharge of sewage in 1969 did not produce all the damage to the property. The discharges were not continuous; instead, they occurred only at intervals. Thus, each discharge inflicted a new injury for which McDonnell had a separate cause of action. Accordingly, McDonnell's claim for damages during the five-year period immediately preceding the filing of his suit was not time-barred.

■ Hampton Roads contends on appeal, as it did at trial, that as a matter of law it was not guilty of trespassing upon McDonnell's land. It claims that if a trespass did occur, the City, not Hampton Roads, is the guilty party because the discharge resulted from excessive wastewater in the City's collector lines. The trial

court rejected this contention, ruling as a matter of law that Hampton Roads was guilty of trespass. We agree.

The undisputed evidence established that Hampton Roads designed, constructed, owned, operated, and controlled the bypass valve. Thus, as the trial court observed, Hampton Roads committed a trespass each time "it caused the overflow valve to operate and discharge sewerage on [McDonnell's] property."[3]

Finally, Hampton Roads contends that the evidence was insufficient to enable the jury to determine with reasonable certainty the damage caused to McDonnell's property. While not denying that it has discharged raw sewage onto McDonnell's land, Hampton Roads argues that other factors contributed to the pollution of the property and that the evidence fails to delineate the portion of damage attributable to Hampton Roads.

A kindred issue arose in *Southern Railway Co.* v. *McMenamin*, 113 Va. 121, 73 S.E. 980 (1912), an action in which the plaintiffs claimed that smoke, cinders, soot, gases, and noise emanating from the railway company's electric plant, coal chute, and engines had damaged their property. In rejecting the railway company's contention that the evidence was insufficient to establish the amount of the damages it had caused, we said:

> Absolute certainty in such cases is not attainable, and is not required. The injured party cannot be denied the right to recover because he cannot show the exact amount with certainty, although he is ready to show, to the satisfaction of the jury, that he has suffered large damage. Where, from the nature of the case, the amount of damage cannot be ascertained with certainty, there is no objection to placing before the jury all the facts and circumstances of the case having any tendency to show damages, or their probable amount, so as to enable them to make the most intelligible and probable estimate which the nature of the case will admit.

*Id.* at 129, 73 S.E. at 982.

More to the point is the recent case of *Nat. Energy Corp.* v. *O'Quinn*, 223 Va. 83, 286 S.E.2d 181 (1982). There, landowners claimed that a coal company's operation of a coal tipple with hop-

---

[3] The record disclosed that Hampton Roads has filed a third-party action against the City that was severed by the trial court. We express no opinion regarding the liability of the City vis-a-vis Hampton Roads.

per, feeder, and crusher emitted loud and excessive noise and caused the spread of coal dust over their properties. The coal company contended, however, that the landowners had failed to prove "with reasonable certainty the amount and source of their damage allegedly caused by dust and noise from [the coal company's] plant" because the evidence showed that other conditions in the neighborhood also generated dust and noise. *Id.* at 89, 286 S.E.2d at 185. We rejected this contention, concluding that the amount and source of the damage caused by the company's facility were sufficiently established.

> When damages are occasioned by a combination of causes originating from different sources, the jury must determine from the evidence the part attributable to the defendant and the part traceable to other causes. And while absolute certainty in the proof of damages in such a case is not attainable and is not required, the burden is on the plaintiff to produce evidence to show within a reasonable degree of certainty the defendant's share of the damage.

*Id.* at 90, 286 S.E.2d at 185. *Accord Sachs* v. *Hoffman*, 224 Va. 545, 549-50, 299 S.E.2d 694, 696 (1983); *Finley, Inc.* v. *Waddell*, 207 Va. 602, 609-10, 151 S.E.2d 347, 353 (1966); *Smith* v. *The Pittston Company*, 203 Va. 711, 715, 127 S.E.2d 79, 82 (1962). *See also Pebble Bldg. Co.* v. *Hopkins, Inc.*, 223 Va. 188, 288 S.E.2d 437 (1982).

In the present case, the evidence established that Hampton Roads discharged 2,182,000 gallons of wastewater containing raw sewage and other pollutants upon McDonnell's land during a ten-month period. Hampton Roads' records indicated the following discharges: on December 24, 1980, 180,000 gallons; on February 3, 1981, 175,000 gallons; on February 18, 1981, 54,000 gallons; on June 7, 1981, 75,000 gallons; on July 4, 1981, 100,000 gallons; on August 11, 1981, 100,000 gallons; on August 24, 1981, 875,000 gallons; on September 8, 1981, 605,000 gallons; and on October 25, 1981, 18,000 gallons. Hampton Roads also conceded that additional unrecorded bypasses may have occurred during the same period of time. An inspection of the property revealed that "[t]oilet paper, condoms, tampons, [and] solid waste" had been discharged onto McDonnell's land. From these facts, the jury rea-

sonably could have inferred that the annual discharge of wastewater containing raw sewage exceeded 2,500,000 gallons.

A research microbiologist testified that his tests of water and sediment samples indicated that a large portion of the pollutants found on McDonnell's land was human waste. His water sample tests over a three-month period showed that, generally, fecal coliforms were in greater abundance than fecal streptococci. Fecal coliforms are bacteria primarily found in the intestinal tract of human beings; fecal streptococci are bacteria that reside primarily in the intestinal tract of animals. The microbiologist further testified that normal urban runoff contains contaminants such as animal wastes and fertilizer.

The microbiologist also testified that his tests isolated 36 types of salmonella in locations at which he had never before found any salmonella. Although he acknowledged that salmonella can originate from sources other than raw sewage, he also opined that the raw sewage discharge was the major source of salmonella in this case.

An engineering expert testified that the cost of curing the damage would exceed $400,000. An expert appraiser opined that without the contaminated condition of the soil, McDonnell's land had a value of $250,000, but that the pollution had rendered the land worthless.

█ The amount of the verdict, which was approved by the trial court, demonstrates that the jury made a considered determination of the portion of damage attributable to Hampton Roads, as opposed to damage traceable to other sources. Accordingly, after viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to McDonnell, we conclude that sufficient evidence was produced to show with a reasonable degree of certainty Hampton Roads' share of the damage.

For the reasons stated, we will affirm the judgment of the trial court.

*Affirmed.*