Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Compton,* S.J.

AMERICAN PHYSICAL THERAPY ASSOCIATION

v. Record No. 051750     OPINION BY JUSTICE ELIZABETH B. LACY
                                           April 21, 2006
FEDERATION OF STATE BOARDS OF
PHYSICAL THERAPY


               FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            John E. Kloch, Judge

     In this appeal, we decide whether the trial court erred in holding that Code § 8.01-246(2), the five-year statute of limitations governing actions on written contracts, barred this contract action in its entirety.

     The American Physical Therapy Association (the APTA) is a non-profit organization devoted to "foster[ing] advancements in physical therapy practice, research, and education in the United States."  Its members include physical therapists, their assistants, and students.  During the period 1953-54, the APTA developed the National Physical Therapy Examination (the Examination), which remains the only licensure examination in the physical therapy field in the United States.  On January 1, 1993, by a document entitled "Transfer Agreement" (the Agreement), the APTA transferred the duties of administering the Examination to the Federation of State

_____

     * Senior Justice Compton participated in the hearing and decision of this case before his death on April 9, 2006.

Boards of Physical Therapy (the Federation), a distinct entity incorporated to assume such duties.  The APTA, however, retained oversight over certain aspects of the Examination, including the Examination fee.  Section 4.08 of the Agreement, entitled "Sale of the Examination and Related Products," states:

> The Federation shall establish prices for the Examination that are generally consistent (taking inflation into account) with prior levels and which are not unduly burdensome to candidates.

When the Federation assumed ownership of the Examination, the fee was $90.  The Federation increased the fee to $185 on January 1, 1995, and on July 1, 2000, it increased the fee to $285 and imposed additional "sitting fees."

On November 8, 2004, the APTA filed a bill of complaint against the Federation alleging, among other claims, that the fee increases breached Section 4.08.  The APTA included in its allegations of breach of contract the Federation's proposed fee increase to $350 for 2005, which the Federation subsequently adopted on January 1, 2005.  The Federation filed a demurrer and special plea of the statute of limitations asserting that, as pled by the APTA, the breach of contract occurred on January 1, 1995 when the Federation increased the fee to $185.  Citing Westminster Investing Corp. v. Lamps Unlimited, Inc., 237 Va. 543, 379 S.E.2d 316 (1989), the

Federation argued that the original breach continued and the subsequent fee increases only created additional damages. Thus, the Federation contended that the APTA's breach of contract claim accrued more than five years before the APTA filed this action and was time-barred.

Following briefing and argument of counsel, the trial court entered an order sustaining the Federation's special plea of the statute of limitations and dismissing all the APTA's claims based on an alleged breach of Section 4.08. We awarded the APTA an appeal.

The sole issue before this Court is whether the trial court erred in ruling that Code § 8.01-246(2) bars the APTA's claims that the Federation breached Section 4.08 because the three fee increases the Federation imposed gave rise only to one cause of action that accrued on January 1, 1995 when the Federation first increased the fee.

In Westminster, upon which the trial court and the Federation rely, we held that where from the inception of a lease, the landlord failed to enforce a provision pertaining to uniform hours of operation for all tenants in a shopping center, the complaining tenant's cause of action accrued on the day of the landlord's initial breach. See id. at 549, 379 S.E.2d at 319.

3

In contrast, the APTA asserts that the proper analysis is that set out in Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 360 S.E.2d 841 (1987). In that case, we examined whether intermittent discharges of raw sewage and other pollutants from a county pumping station onto a landowner's property gave rise to one cause of action that accrued in 1969, when the first discharge occurred, or separate causes of action that accrued with each discharge. We explained that "[i]f the wrongful act is of a permanent nature and one that produces 'all the damage which can ever result from it, [then] the entire damages must be recovered in one action,' and the statute of limitations begins to run from the date of the wrongful act," but if the wrongful acts are not continuous and "occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." Id. (quoting Norfolk & W. R. Co. v. Allen, 118 Va. 428, 435, 87 S.E. 558, 560 (1916), aff'g on rehearing, 118 Va. 428, 87 S.E. 558 (1915)). Because not all of the injury to the landowner's property occurred with the first discharge in 1969 and because the discharges took place at intervals, we determined the landowner could bring his claims for damages that occurred in that five-year period directly preceding the filing of his lawsuit. Id. at 239, 360 S.E.2d at 844. Whether the Federation's actions constituted a single

continuing breach contemplated by Westminster or a series of separate breaches addressed in Hampton Roads depends on the relevant facts.

In this case, Section 4.08 mandates that the Federation "shall establish prices for the Examination" that comply with the requirements set out in that section. The term "shall establish prices" does not, as the Federation suggests, impose an obligation such as that of the landlord in Westminster that is "continuing in nature" and remains "each day whether the Federation increases, maintains, or decreases the Exam fee." Rather, as the APTA argues, the term contemplates a distinct obligation that arises each time the Federation imposes a new fee. Furthermore, by referring to "prior levels" in determining whether the new fees are consistent and not unduly burdensome, the Section contemplates that the new fee will not be evaluated by reference back solely to the amount of the original fee. As in Hampton Roads, the first injury did not inflict "all the damage which can ever result," 234 Va. at 239, 360 S.E.2d at 843; rather, each time the Federation imposed a new fee, a new injury occurred and a separate cause of action accrued. Under these circumstances, the Federation's actions constituted distinct, separate breaches of the Agreement, and the APTA is entitled to bring its claims

for those breaches of contract that occurred in the five years preceding its filing of this suit.

Accordingly, we will reverse the ruling of the trial court and remand the case for further proceedings.

<u>Reversed and remanded.</u>