Present: All the Justices

JANE WASHBURN ROBINSON,
TRUSTEEE FOR THE
JANE WASHBURN ROBINSON LIVING TRUST

OPINION BY
v. Record No. 180631                          CHIEF JUSTICE DONALD W. LEMONS
                                          July 18, 2019

NELS P. NORDQUIST, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

In this appeal, we consider whether the Circuit Court of the City of Alexandria ("circuit court") properly dismissed trespass and nuisance claims as time-barred and properly construed the provisions of express easements. Additionally, we consider whether the circuit court abused its discretion by denying a petition for a rule to show cause.

## I. Facts and Proceedings

This appeal involves a dispute between neighboring landowners in Old Town Alexandria. Jane Washburn Robinson ("Robinson"), as Trustee of the Jane Washburn Robinson Living Trust, owns real property located at 404 Duke Street and 303 South Royal Street of Old Town Alexandria (collectively "404 Duke Street"). In December 2015, Robinson filed a complaint in circuit court against Nels P. Nordquist and Jennifer D. Nordquist (collectively "Nordquists"), her neighbors and the owners of 406 Duke Street and 408 Duke Street (collectively "406-08 Duke Street"), alleging that the Nordquists installed an underground sprinkler system, which causes "persistent and damaging encroachments of water" to 404 Duke Street. Additionally, Robinson alleged that the Nordquists violated her rights under two express easements. Robinson later learned that she needed access to certain areas of the Nordquists' property to repair water

damage to 404 Duke Street.  She moved to amend the complaint to request access to those areas, and the circuit court granted the motion to amend.

In the amended complaint, Robinson alleged that in 1960, the former owner of 406-08 Duke Street executed a "Deed of Bargain and Sale and Easement," which granted the former owner of 404 Duke Street and her successors "a perpetual easement to keep and maintain openings on the west side of [] 404 Duke Street overlooking the premises 406-[0]8 Duke Street for the purpose of admitting light and air through said openings, and to locate ventilation outlets on and in said west side" ("1960 Easement").  In 1969, the former owners of 404 Duke Street and 406-08 Duke Street executed a Deed of Indenture "to affirm and enlarge the 1960 Easement" ("1969 Indenture").  In relevant part, the 1969 Indenture provides:

> A 3-foot strip of land (herein called the Median), the easterly portion of 406-[0]8, adjoining the westerly boundary of 404 [Duke Street], shall forever be and remain open and free of all buildings and structures except the chimney or chimneys hereinafter in Section 3 of this Indenture provided for, and except as aforesaid the same shall be and remain open yard, the right so secured hereby appurtenant to 404 and enjoyed by the party of the second part and any and all persons who succeed her in the ownership of 404.

Section 3 of the 1969 Indenture provides that the owner of 404 Duke Street and "her heirs and assigns" can erect "one or more chimneys" in the median "at any time."

Robinson asserted that after the Nordquists purchased 406-08 Duke Street, they "significantly expanded" a brick wall "that encloses and blocks access" to the 1960 Easement and "denied [her] use of gates along the brick wall."  As a result, Robinson claimed that she cannot "keep and maintain openings on the west side of [] 404 Duke Street."  The Nordquists also "constructed an arbor and [] made major changes in their landscaping, including the planting of numerous trees and bushes," which "severely and detrimentally restrict[]" the "amount of light

2

and air entering" 404 Duke Street. Robinson alleged that the brick wall, arbor, trees, bushes, sprinkler system, and various objects such as "ladders and toys" encroached upon the median. Robinson sought declaratory judgment that the Nordquists had "improperly denied" her access to 406-08 Duke Street for the purpose of "maintain[ing] openings" on her property, "violated the [1960] [E]asement's light and air requirement," and violated the Deed of Indenture's requirement that the median remain "open yard."

With respect to water damage, Robinson alleged that between 1988, when she took possession of 404 Duke Street, and 2005, when the Nordquists took possession of 406-08 Duke Street, her property "did not sustain a single incident of water penetration." "Subsequent to [the Nordquists] installation of their sprinkler system," 404 Duke Street began "suffer[ing] persistent and damaging encroachments of water." Robinson described the encroachments as "on-going," "continuous," and "intermittent," and stated "significant water intrusion and damage did not begin to take place until mid-2011." She alleged the "entrance foyer, kitchen, [] finished basement," and "foundation" had sustained water damage, but did not specify when these areas were first damaged or when the Nordquists installed their sprinkler system. She claimed the "encroachment of water" was both an intentional trespass and a private nuisance, and sought compensatory damages and injunctive relief.

The Nordquists filed a demurrer and plea in bar to the amended complaint. They demurred to the easement claims, arguing the 1960 Easement did not "create any right of access" to their property. Instead, the 1960 Easement and 1969 Indenture created an "easement of light and air defined by the three foot median." They contended that the "original 1960 [E]asement of light and air contained no boundaries or scope, as would generally be required to properly create an easement." The 1969 Indenture "cure[d] this oversight" by "delineating [the easement's]

3

scope according to a definite no-build zone, the median." They asserted that the 1969 Indenture required the median to be "free of 'buildings and structures," but did not "prohibit additional planting" or "call for the removal of walls, gates, fences, or vegetation." Therefore, the Nordquists argued they had not violated Robinson's rights under the 1960 Easement and 1969 Indenture.

In their plea in bar, the Nordquists argued that the "water damage claim[s]" were barred by the "five year statute of limitations" that applies to "actions for injury to property." They contended that the amended complaint "alleges a continuous, rather than an intermittent, trespass," and "directly attributes" the "encroachments of water" to the Nordquists' "installation of an underground sprinkler system." They asserted that "the sprinkler installation took place in or about June 2008." Consequently, they argued the trespass and nuisance claims were time-barred because Robinson filed the complaint over seven years after the sprinkler system was installed.

The Nordquists included correspondence from Robinson dated between 2005 and 2008 as exhibits to the plea in bar. In the correspondence, Robinson informed the Nordquists that their sprinkler was spraying on 404 Duke Street, causing "water damage on the first floor." They also included Robinson's answer to an interrogatory as an exhibit, which stated that Robinson had "not observe[d] any instances of water encroachment during the winter months when the Defendants ceased their watering activities."

Robinson filed an opposition to the plea in bar, demanding trial by jury. She asserted that fact-finding was needed to determine whether water damage to 404 Duke Street was caused by an "intermittent" or "continuous trespass." Additionally, she argued that a fact-finder needed to consider her "theory that it took a period of time after the installation of the sprinklers for the

4

water infiltration to begin creating structural damage to the mortar in [the] basement wall." Because the "issues raised in the plea in bar [were] factually contested," Robinson asked the circuit court to deny the plea and allow the action to proceed to trial.

The circuit court held a hearing on the demurrer and plea in bar and heard argument from counsel. At the conclusion of the hearing, the circuit court determined, based on "the four corners of the amended complaint," that "it's very clear [Robinson alleged] an ongoing continuous encroachment" of water. Therefore, the circuit court held the trespass and nuisance claims were barred by the five-year statute of limitations. Robinson then moved for leave to amend the amended complaint to clarify the water encroachments were intermittent, rather than continuous. The court denied the motion, stating an amendment was not "appropriate" on the "eve of trial."

The circuit court also held that pursuant to the language of the 1960 Easement, "the owner of 404 Duke Street [] shall be granted access to enter the yard of 406 Duke Street for the purposes of maintaining the openings and ventilation outlets on and in the west side of 404 Duke Street." However, the circuit court determined "[t]he term 'light and air' in the 1960 [E]asement is vague and ambiguous, without dimensions, and is therefore unenforceable." With respect to the 1969 Indenture, the circuit court held that it "establishes a valid easement for a three-foot median," which "is limited to prohibiting a building or structure," as defined under Code § 36-97. The circuit court then determined that the "specific items identified in the [a]mended [c]omplaint as violating the three foot easement are neither buildings nor structures [under Code § 36-97], and their presence does not violate the terms and conditions of the easement." On March 22, 2017, the circuit court entered an order in accordance with its rulings.

5

The parties filed motions for reconsideration. Robinson argued, among other things, that the arbor was a structure within the meaning of Code § 36-97, and that the amended complaint did not establish that the water encroachments were continuous. The Nordquists asserted that, at the hearing on the demurrer and plea in bar, the circuit court ruled the term "open yard" in the 1969 Indenture "is vague and ambiguous, without dimensions, and is therefore unenforceable," but did not include the ruling in its order. They argued that the circuit court properly addressed the meaning of open yard at the hearing, and asked the court to reinstate its ruling.

While the motions for reconsideration were pending, Robinson filed a "petition for a rule to show cause as to why the Nordquists should not be held in contempt for failing to comply" with the circuit court's March 22, 2017 order. Robinson stated that the Nordquists had refused "to provide [her] with information or an ability by which [she] may access 406 Duke Street," despite the March 22, 2017 order that she be given such access. Robinson claimed that she "ha[d] been denied the ability to have the openings on the west side of [her] property serviced by a pest control company," and had been denied the ability "to wash windows" and complete "other maintenance" on the western wall of 404 Duke Street. Consequently, Robinson asked the circuit court to sanction the Nordquists "to compel their compliance" with the court's order.

On September 13, 2017, the circuit court entered an order denying Robinson's motion to reconsider its rulings on "the trespass and nuisance claims related to water intrusion." The court granted the motion with respect to its ruling regarding the arbor, holding the arbor is a structure and "no portion of the arbor shall be on or encroach onto the three foot median." The court also granted the Nordquists' motion to reconsider regarding the meaning of open yard, defining the term as "open and free of all buildings and structures," except the chimney described in Section

6

3 of the 1969 Indenture.  Finally, the court denied the petition for a rule to show cause, and set

forth the following procedure for Robinson to access the western wall of 404 Duke Street:

> (a) for non-emergency entry requests, Mrs. Robinson will provide a statement of the purpose for which she needs the entry, the name of the company that will be accessing the median, and three proposed dates. The Nordquists, within 48 hours, will then respond with which dates work with their schedule.
>
> (b) for emergency issues, for issues that cannot be resolved by Fire Personnel, EMS, Police, or Rescue, Mrs. Robinson shall contact John D. McGavin, Esq., or members of his firm, who will provide access if necessary to address an emergency situation, which cannot be dealt with by direct communication with the Nordquists.

Thereafter, the circuit court entered a nonsuit order for certain claims that are not at issue

in this appeal. The order stated that "[a]ll other rulings of the [c]ourt as reflected in its orders

dated March 22, 2017 and September 13, 2017 are hereby final."

Robinson appealed to this Court, and we granted an appeal on the following assignments

of error:

> 1. The trial court erroneously granted Defendants' Plea in Bar on the basis of improper factual findings that Plaintiff's Trespass and Nuisance claims were "continuous" rather than "intermittent" and thus barred by the applicable statute of limitations despite admissions by Defendants and independent evidence that the trespass and nuisance did not occur each year during the winter months when a sprinkler system was turned off, as well as when Defendants did not use other watering methods, which are actions within the Defendants' control.
>
> 2. The trial court erred when it denied Plaintiff's motion for leave to amend her Trespass and Nuisance claims to properly reflect the evidence adduced during discovery and reflected in attachments to Defendants' Plea Brief.
>
> 3. The trial court erred when it granted Defendants' Demurrer, holding that the 1960 Deed of Bargain and Sale and Easement's "perpetual easement" to the owner of 404 Duke Street and its successors "to keep and maintain openings on the west side of the

7

premises: 404 Duke Street overlooking the premises 406-[0]8 Duke Street, for the purpose of admitting light and air through said openings," was "vague," "ambiguous," and therefore, "unenforceable," which circumvented and ignored the intent of the drafters to protect the access of Plaintiff's property to light and air for Plaintiff's openings.

4. The trial court erred when it held that the provision in a 1969 Deed of Indenture that created a "3-foot strip of land (herein called the Median)" that "shall forever be and remain open and free of all buildings and structures . . . except as aforesaid the same shall be and remain open yard, the right so secured hereby to be appurtenant to 404 [Duke Street] and enjoyed by [the owner of 404 Duke Street]" only protected the Median's "open yard" from a certain class of items in a narrow definition of "buildings" and "structures," but allowed all other types of obstructions to be placed within the defined Median, thus circumventing and ignoring the intent of the Indenture's drafters.

5. The trial court erred by refusing to issue a Rule to Show Cause and by entering an order restricting Plaintiff's access to the openings on the west side of Plaintiff's properties despite the 1960 "perpetual easement" allowing the owner of 404 Duke Street and 303 S. Royal St[reet] (Plaintiff) access to enter the yard of 406 Duke Street "to keep and maintain openings on the west side of 404 overlooking 406-[0]8 [Duke Street]" without any such restrictions.

## II. Analysis

### A. Standard of Review

This appeal arises from the circuit court's decision to grant the Nordquists' plea in bar based on the statute of limitations and their demurrer, and to deny Robinson's petition for a rule to show cause. "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "Appeal of a decision on a plea in bar of the statute of limitations involves a question of law that we review de novo." *Van Dam v. Gay*, 280 Va. 457, 460 (2010). "Where no evidence is taken in support of the plea, the trial

8

court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996).

"A demurrer tests the legal sufficiency of a motion for judgment and admits the truth of all material facts that are properly pleaded." *Harris v. Kreutzer*, 271 Va. 188, 195 (2006). "We review a circuit court's decision on demurrer de novo." *Rafalko v. Georgiadis*, 290 Va. 384, 396 (2015).

We review a circuit court's decision to deny a petition for a rule to show cause for an abuse of discretion. *See Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007) ("A court has discretion in the exercise of its contempt power.")

### B. Statute of Limitations

In the first assignment of error, Robinson challenges the circuit court's decision to grant the plea in bar as to her trespass and nuisance claims based on the statute of limitations. Because these claims concern injury to property, a five-year statute of limitations applies. *See* Code § 8.01 243(B) ("Every action for injury to property . . . shall be brought within five years after the cause of action accrues.") Robinson filed this action in December 2015, and consequently, her claims for trespass and nuisance are barred if they accrued before December 2010.

A cause of action for injury to property accrues "when the first measurable damage occurs." *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017). "Subsequent, compounding or aggravating damage—if attributable to the original instrumentality or human agency—does not restart a new limitation period for each increment of additional damage." *Id.* at 124. Therefore, if a "wrongful act is of a permanent nature" and "produces 'all the damage which can ever result from it, [then] the entire damages must be recovered in one action,' and the statute of limitations begins to run from the date of the

9

wrongful act." *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987) (alteration in original) (quoting *Norfolk & W.R. Co. v. Allen*, 118 Va. 428, 435 (1916)). "Conversely, when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Id*.

Applying these principles in *Hampton Roads*, we concluded that multiple discharges of wastewater from a sewage plant onto private property each gave rise to a new cause of action. *Id.* The sewage plant did not discharge wastewater onto private property "[u]nder normal conditions." *Id*. at 237. When the flow of sewage reached "three times the normal quantity," a bypass valve opened and diverted wastewater onto private property owned by McDonnell, the plaintiff. *Id.* Following the initial discharge in 1969, the sewage plant discharged wastewater onto McDonnell's property on at least nine separate occasions between 1980 and 1981. *Id.* at 237, 239, 241. Observing that "the original discharge of sewage in 1969 did not produce all the damage to the property" and that the discharges "occurred only at intervals," we held that "each discharge inflicted a new injury for which McDonnell had a separate cause of action." *Id*. at 239.

In *Forest Lakes*, two property owners' associations ("POAs") brought an action for trespass and nuisance, claiming sediment basins in a shopping center "discharged sediment into a creek that flowed into a lake owned by the POAs." 293 Va. at 116. The POAs alleged that sediment began flowing into the lake in 2003 or 2004, and "continue[d]" to the day they filed their complaint in 2011. *Id*. at 118-19. They further alleged that deposits of silt and sediments "var[ied in] amounts" based on several factors, and that "each new release of silt and sediments constitut[ed] a new and independent trespass to the [POAs'] properties." *Id*. at 119. The defendants, the owners and developers of the shopping center, filed pleas in bar based on the

10

statute of limitations. *Id.* After hearing evidence ore tenus, the trial court sustained the pleas in bar, finding the discharge was "continuous" rather than "intermittent." *Id.* at 122.

On appeal, we noted that the parties conceded that a cause of action for trespass accrued no later than 2004. *Id.* at 129. Consequently, we framed the issue as whether discharges after 2004 were "merely a continuation of the same injury or were . . . so temporary and episodic as to imply the accrual of new causes of action triggering new five-year limitation periods." *Id.* (emphasis omitted). We observed that the sediment basins, which were "permanently in place by fall 2004," "automatically controlled their day-today operations" and were not "modified" or "control[led]" by the defendants. *Id.* at 129. Further, expert testimony established the sediment discharge "continuously flowed from the basins into [the lake] because of the functional design of the basins." *Id.* Accordingly, we held that the trial court had "ample grounds" for its ruling that the basins discharged sediment "on a continuous basis and that the five-year statute of limitations was not revived for any particular discharge episode." *Id.*

In this case, Robinson alleged that 404 Duke street began "suffer[ing] persistent and damaging encroachments of water" "[s]ubsequent to [the Nordquists'] installation of their sprinkler system." She alleged the "entrance foyer, kitchen, [] finished basement," and "foundation" have sustained water damage, but did not specify when these areas were first damaged or when the Nordquists installed their sprinkler system. However, she stated "significant water intrusion and damage did not begin to take place until mid-2011." She described the water encroachments as "on-going," and "continuous," but also stated that they were "repeated and intermittent." In addition, she alleged that the water discharges were intentional, suggesting separate volitional acts. These allegations demonstrate that it is not clear from the face of the amended complaint when the first measurable damage occurred or whether

11

the water encroachments were continuous or intermittent. Therefore, the circuit court erred by sustaining the plea in bar based on the allegations in the amended complaint.[*]

In her opposition to the plea in bar, Robinson "demand[ed] a jury trial" on the factual issues raised by the plea in bar, including whether the "claims for water damage are time barred." Because the allegations in the amended complaint do not establish that this action is time barred, Robinson is entitled to a jury trial on this issue. *See Hawthorne*, 279 Va. at 577 ("If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea.")

### C. Easement Claims

In the third assignment of error, Robinson challenges the circuit court's ruling that the "term 'light and air'" in the 1960 Easement "is vague and ambiguous, without dimensions, and is therefore unenforceable." An express easement, like the 1960 Easement, is not unenforceable because it lacks specific dimensions. *See Anderson v. Delore*, 278 Va. 251, 257 (2009) ("A deed may expressly create an easement but fail to define specifically its dimensions.") Rather, "[i]n resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." *Id.* at 257.

When a deed does not define the dimensions or purpose of an easement, "the determination of the easement's scope 'is made by reference to the intention of the parties to the

---

[*] In the second assignment of error, Robinson asserts that the circuit court erred by denying her motion for leave to amend the amended complaint. She moved to amend to clarify that her trespass and nuisance claims were based on intermittent water encroachments. Because we have concluded that the circuit court erred by sustaining the plea in bar, the question presented by the second assignment of error is moot. *See E.C. v. Virginia Dep't of Juvenile Justice*, 283 Va. 522, 530 (2012).

12

grant,' ascertained from the circumstances pertaining to the parties and the land at the time of the grant." *Id*. (quoting *Waskey v. Lewis*, 224 Va. 206, 211 (1982)). "[I]f the granting language states the object or purpose of the easement, the dimensions of the easement may be inferred 'to be such as are reasonably sufficient for the accomplishment of that object.'" *Id.* (quoting *Hamlin v. Pandapas*, 197 Va. 659, 664 (1956)).

The 1960 Easement granted the former owner of 404 Duke Street and her successors "a perpetual easement to keep and maintain openings on the west side of [] 404 Duke Street overlooking the premises 406-[0]8 Duke Street for the purpose of admitting light and air through said openings, and to locate ventilation outlets on and in said west side." Because the language of the 1960 Easement describes its purpose, its dimensions "may be inferred 'to be such as are reasonably sufficient for the accomplishment of [this] object.'" *Id*. Accordingly, the circuit court erred by holding that the term "light and air" is unenforceable because it is "vague," "ambiguous," and "without dimensions."

In the fourth assignment of error, Robinson challenges the circuit court's holding that the term "open yard is defined within the language of Section 2 of the 1969 [I]ndenture to remain open and free of all buildings and structures, except the chimney or chimneys that are described in Section 3 of the [I]ndenture." Section 2 of the Indenture provides that the median "shall forever be and remain open and free of all buildings and structures except the chimney or chimneys hereinafter in Section 3 of this Indenture provided for, *and* except as aforesaid the same shall be and remain open yard." (emphasis added). When construing deeds and other written instruments:

> It is a well-settled rule [] that inasmuch as the parties must have intended all the provisions and terms of a deed to have some meaning and be given some import, from the fact that the terms and provisions were actually inserted in the deed, a deed will be so

13

interpreted as to make it operative and effective in all its
provisions, if its terms are susceptible of such interpretation. Every
word, if possible, is to have effect, for, it has been said, the deed,
as the witness to the contract between the parties, should speak the
truth, the whole truth, and nothing but the truth.

*Minner v. City of Lynchburg*, 204 Va. 180, 189 (1963) (quoting *Connor v. Hendrix*, 194 Va. 17, 25 (1952)). By defining the term "open yard" as "free of all buildings and structures," the circuit court disregarded the conjunction between these phrases and rendered the term "open yard" meaningless. We hold that the plain language of the 1969 Indenture requires the median to be both "open yard" and "free of all building and structures."

Finally, in the fifth assignment of error, Robinson asserts that the circuit court erred by denying her petition for a rule to show cause. Robinson maintains that the Nordquists violated the March 22, 2017 order when they refused to provide a pest control company with access to the western wall of 404 Duke Street. The March 22, 2017 order granted Robinson "access to enter the yard of 406 Duke Street for the purpose of maintaining the openings and ventilation outlets on and in the west side of 404 Duke Street." The order did not address the manner in which access should be provided, nor did it address whether the easement could be used for pest control purposes. Accordingly, the circuit court did not abuse its discretion by denying the petition for a rule to show cause.

Robinson also contends that the circuit court erred by setting forth a procedure for her to follow in order to access the western wall of 404 Duke Street. For non-emergency entry requests, the circuit court directed Robinson to "provide a statement of the purpose for which she needs the entry, the name of the company that will be accessing the median, and three proposed dates." The circuit court ordered the Nordquists to respond within 48 hours. For emergency access, the circuit court directed Robinson to contact the Nordquists or their counsel for issues

14

that cannot be resolved by first responders.  Robinson claims that this procedure improperly "add[ed] restrictions to [her] right of access."  The 1960 Easement is silent regarding how the owners of 404 Duke Street can access its western wall, and no language establishes an unfettered right of access.  The procedure for access set forth by the circuit court is reasonable and the court did not err in prescribing it.

### III.  Conclusion

For the reasons stated, we will affirm the judgment of the circuit court in part, reverse it in part, and remand the case for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

15