PRESENT:  Lemons, C.J., Goodwyn, Mims, Powell, McCullough, and Chafin, JJ., and Millette, S.J.

C. ROBERT JOHNSON, III, ET AL.

v.  Record No. 191563

CITY OF SUFFOLK, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
December 10, 2020

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Lawson Wayne Farmer, Judge

The petitioners lease oyster grounds from the Commonwealth for the purpose of raising oysters in the Nansemond River.  They filed an inverse condemnation claim against the City of Suffolk and the Hampton Roads Sanitation District alleging that discharges from a sewer system operated by the respondents polluted the waters in which they raise their oysters.  The petitioners alleged that the Virginia Department of Health's Division of Shellfish Sanitation closed polluted parts of the river to the harvesting of oysters, thereby "preventing the [p]etitioners from properly managing and using their oyster ground leases, harvesting their oyster property, planting oysters, and otherwise using and enjoying their property."  The respondents filed demurrers on various grounds.  The circuit court granted the respondents' demurrers and dismissed the case.  We conclude the circuit court properly granted the demurrers and we, therefore, will affirm the judgment below.

BACKGROUND

The petitioners, C. Robert Johnson, III, Lisa Lawson Johnson, Thomas A. Hazelwood, Johnson and Sons Seafood, LLC, and Hazelwood Oyster Farms, Inc., hold leases to publicly owned oyster-grounds in the Nansemond River.  The City of Suffolk ("City") and the Hampton Roads Sanitation District ("Sanitation District") "use, operate, and maintain sanitary sewer systems to accommodate the needs of the City of Suffolk and the surrounding area."  In addition,

"[t]he City of Suffolk uses, operates, and maintains a storm water system to accommodate the needs of the City of Suffolk and the surrounding area."

The petitioners filed a declaratory judgment action against the City and the Sanitation District in the Circuit Court for the City of Suffolk alleging that the respondents "purposefully use, operate, and maintain the sanitary sewer systems and storm water system in a manner that causes untreated sewage, waste water, and other items to enter the [p]etitioners' property, taking and damaging the property by, among other things, causing closures to [p]etitioners' property and preventing [p]etitioners from using their property." "As a result of the [r]espondents' purposeful acts and omissions, the Virginia Department of Health's Division of Shellfish Sanitation closed polluted parts of the river [to the] harvesting [of] oysters, preventing the [p]etitioners from properly managing and using their oyster ground leases, harvesting their oyster property, planting oysters, and otherwise using and enjoying their property."

The complaint alleges that the City and the Sanitation District are legally obligated to design and operate their sewer system in such a manner as to avoid discharges of pollutants. The petitioners point to the 1960 Acts of Assembly, 1960 Va. Acts chap. 66, § 40 and to "an Amended Consent Decree" between the Sanitation District and the United States and the Commonwealth of Virginia, which addresses "unpermitted discharges of raw sewage from [r]espondents' sanitary sewer systems." Moreover, according to the petitioners, "the State Water Control Board of the Commonwealth of Virginia's Department of Environmental Quality . . . entered into a Consent Order with localities, including the City of Suffolk, to resolve 'certain violations of the State Water Control Law,' including unauthorized discharges of untreated sewage."

2

The City and the Sanitation District each filed demurrers, contending, on several grounds, that the petitioners' inverse condemnation action failed to state a legally viable claim. The circuit court granted the demurrers and dismissed the petition, reasoning that "*Darling v. City of Newport News*, 249 U.S. 540 (1919) bars recovery in inverse condemnation under the alleged circumstances." The petitioners appeal from this decision.

ANALYSIS

The petitioners assign the following error:

> The trial court erroneously sustained the demurrers, because the declaratory-judgment petition states a facially valid claim for inverse condemnation, and:
>
> A. The trial court erroneously based its ruling on federal caselaw interpreting the United States Constitution, because the oystermen's claims are based on the Constitution of Virginia.
>
> B. The trial court erroneously ruled that the City and [the Sanitation District] have the right to pollute the Commonwealth's waters and that they need not pay just compensation to the oystermen. In doing so, it relied on now-obsolete caselaw, and erroneously applied that caselaw.

The oyster has played and continues to play a significant role "in the culture, history, economy, and ecology of the Chesapeake Bay and its tidal waters." Chesapeake Bay Foundation amicus Br. at 1. Indeed, the word "Chesapeake" is derived from its Native American name "Chesepioc" which means "great shellfish bay." *Id.* at 4. There also is no denying that raising oysters requires skill, patience, and backbreaking work. Over a century ago, in *Darling v. City of Newport News*, 123 Va. 14 (1918), *aff'd*, 249 U.S. 540 (1919), we concluded that oyster farmers could not recover in eminent domain for damages to their oysters caused by pollution from a governmental entity. The petitioners urge us to revisit this ruling in light of significant changes to laws designed to protect the environment.

3

I.  THE LIMITED NATURE OF THE PROPERTY INTEREST CONFERRED BY A LEASE OF STATE-OWNED BOTTOMLANDS FOR THE PURPOSE OF RAISING OYSTERS FORECLOSES RECOVERY IN AN INVERSE CONDEMNATION ACTION.

The United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend V. The Constitution of Virginia similarly provides that "[n]o private property shall be damaged or taken for public use without just compensation to the owner thereof." Va. Const. art. I, § 11.

A threshold question in any takings case is whether the government action has affected a property interest that is cognizable under the pertinent clauses of the United States and Virginia constitutions. In other words, does the plaintiff have an interest that is recognized as a property interest? *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (In a takings case, "as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment."). Property damage is only compensable in inverse condemnation cases where it involves the "dislocation of a specific right contained in the property owner's bundle of property rights." *Byler v. Virginia Elec. & Power Co.*, 284 Va. 501, 509 (2012). To state a claim, the property owner must allege that a "right connected to the property is adversely affected by governmental action." *Livingston v. Virginia Dep't of Transp.*, 284 Va. 140, 157 (2012). Whether a taking has occurred is a question of law that we review de novo on appeal. *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010).

A "unilateral expectation or an abstract need is not a property interest entitled to protection." *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 161 (1980). As the United States Supreme Court has observed, "not all economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are

4

so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *Kaiser Aetna v. United States*, 444 U.S. 164, 178 (1979) (quoting *United States v. Willow River Power Co.*, 324 U.S. 499, 502 (1945)).

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . ." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The parameters of a protected property interest, the sticks in the bundle of rights, are delimited by the law that creates the interest, *id*. at 577-78, and by "existing rules or understandings" and "background principles" derived from independent sources, such as state, federal, or common law, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992).

This threshold inquiry is often quite simple to resolve, and is often uncontested, such as when a property owner owns a fee simple interest in the land taken or damaged. Other property interests, however, call for a more searching inquiry of the compensability of the interest asserted. *See, e.g.*, *Colvin Cattle Co., Inc. v. United States*, 468 F.3d 803, 805-06 (Fed. Cir. 2006) (assessing whether cancellation of a lease granting a rancher grazing rights under a federal allotment constituted a taking).

We look to statutes, cases, and the leases at issue to elucidate the nature of a lessee's rights under an oyster lease of publicly owned bottomland. First, the Commonwealth has "title to and dominion over subaqueous bottomland." *Virginia Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 381 (2014); *see also* Code § 28.2-1200 (providing that the Commonwealth retains ownership of "[a]ll the beds of the bays, rivers, creeks and the shores of the sea" within its jurisdiction). "The state has succeeded to all the rights of both the Crown and Parliament of England in the navigable waters within its limits, and in the soil under them." *Newport News*

*Shipbuilding & Dry Dock Co. v. Jones*, 105 Va. 503, 513 (1906).  A lessee does not own the bottomlands or have the right to control the waters that flow over them.

Second, the leases involved in this case do not themselves elucidate the property right at stake.  The leases describe the boundary of the leasehold and reference applicable statutes.  Therefore, we must look to the statutory scheme to determine the scope of the petitioners' rights under these leases.  Code § 28.2-603 authorizes the Commissioner of the Virginia Marine Resources Commission to lease public waterfront lands for the purpose of raising oysters.  Lessees have the right to occupy the oyster bed "for the purpose of planting or propagating oysters."  *See* Code § 28.2-603 (". . . the beds of the bays, rivers, and creeks and shores of the sea . . . may be occupied for the purpose of planting or propagating oysters . . . and may be leased by the Commissioner upon the receipt of a proper application").  Rent is set at $1.50 per acre.  Code § 28.2-612.[1]

The Code authorizes relief from rent payments if "any natural or man-made condition arises which precludes satisfactory culture of oysters in that area."  Code § 28.2-627.  Furthermore, the State Health Commissioner is authorized to "analyze the water and bottom sediment in and adjacent to the crustacea, finfish, or shellfish growing areas for evidence of pollution, and he may survey the sanitary conditions and pollution hazards adjacent to shellfish growing areas."  Code § 28.2-803.  The State Health Commissioner can condemn areas where pollution renders the shellfish in the area unfit for market.  Code § 28.2-807.  The right to harvest the oysters is further limited by statute.  The oysters can be harvested only if the sanitary conditions permit harvesting.  *See* Code §§ 28.2-804 through -807.

---

[1] In addition to rent, there are fees associated with an application to obtain or transfer a lease, the applicant must pay the costs of a survey to obtain the lease, and lease holders must also pay renewal fees.  *See* Code §§ 28.2-608, -625.

Third, case law provides additional guidance concerning the lessee's right. "Shellfish leases, which are grants in derogation of the common or public right, are strictly construed against the lessee. 'Nothing passes except what is granted specifically or by necessary implication.'" *Working Waterman's Ass'n v. Seafood Harvesters, Inc.*, 227 Va. 101, 111 (1984) (citing *Darling*, 123 Va. at 18). The lessee "does not take a fee simple title, nor can he use the property for any other purpose except for that stated in the statute, and hence every other right theretofore in the public is preserved." *Id.* (citing *Darling*, 123 Va. at 19). The lease confers a right to use the leased bottomlands and to exclude others. *Power v. Tazewells*, 66 Va. (25 Gratt.) 786, 789 (1875).

In *Darling*, we addressed a claim that is virtually indistinguishable from the petitioners' claim here: an oyster farmer sought compensation for damage to his oysters caused by discharges from the sewer system of the City of Newport News. 123 Va. at 16. We held that the damage to the oysters was not compensable. *Id.* at 21. We pointed to the limited right of an oyster farmer who holds a lease to grow oysters over public land, describing the right as follows:

> the lease is made only "for the purpose of planting and propagating oysters thereon," and it is for this purpose alone that the planter is authorized to use and occupy such ground, that is to say, that while any citizen might have taken oysters therefrom before the grant, afterwards he only may do so, and all others are excluded from either planting or taking oysters from such ground during his term. This marks the limit of his right, for there is nothing to indicate that any other public or private right is withdrawn, limited, or curtailed.

*Id.* at 18-19. This Court further noted the countervailing right of a municipal corporation "situated on an arm of the sea, adjacent to tidal waters . . . to use such waters for the purpose of carrying off its refuse and sewage to the sea, so long as such use does not create a public nuisance." *Id.* at 17.

7

The United States Supreme Court affirmed. *Darling*, 249 U.S. at 544. The Court reasoned that there was no taking under the Fifth Amendment because the lease owner leased the oyster grounds subject to "the risk of the pollution of the water." *Id.* at 543.

The petitioners correctly point out that environmental law is far more robust now than it was in 1918. A range of state and federal laws, as well as, in this instance, consent decrees, impose extensive restrictions on the operation of sewer systems and any discharges they may make. Indeed, since 1918 the Constitution of Virginia has been amended to state that the policy of the Commonwealth is to provide the people of Virginia with clean water and air. *See* Va. Const. art. XI.[2]

Environmental protections certainly have changed a great deal in the years since we decided *Darling*. None of the sources cited by the petitioners, however, expand the scope of the *property rights* the petitioners obtained when they were granted a lease to plant oysters on state-owned bottomland.

The statutes and case law governing oyster leases lead to several conclusions. First, the petitioners' leases confer on them the right to physically occupy state-owned bottomland and to exclude others. Code § 28.2-618; *Power*, 66 Va. (25 Gratt.) at 789. The respondents did not interfere with the petitioners' rights to be on the leased lands. Second, the leases confer on the

---

[2] Article XI, § 1 provides:

> To the end that the people have clean air, pure water, and the use
> and enjoyment for recreation of adequate public lands, waters, and
> other natural resources, it shall be the policy of the Commonwealth
> to conserve, develop, and utilize its natural resources, its public
> lands . . . . Further, it shall be the Commonwealth's policy to
> protect its atmosphere, lands, and waters from pollution,
> impairment, or destruction, for the benefit, enjoyment, and general
> welfare of the people of the Commonwealth.

petitioners the right to physical possession and harvesting of the oysters raised on the leased grounds, to the exclusion of other possible claimants. *See Town of Cape Charles v. Ballard Bros. Fish Co., Inc.*, 200 Va. 667, 673 (1959). The respondents did not remove or physically destroy the oysters themselves. Third, there is a distinction between the water bottoms and the water itself. The petitioners do not own or control the waters that pass over the leased oyster grounds. Fourth, nothing under the governing statutes and case law or the leases themselves confers or presupposes a right to grow oysters in conditions free of pollution or guarantee a lessee a commercially viable oyster lease. To the contrary, the governing statutes contemplate the condemnation of polluted growing areas and oysters when sanitary conditions render the oysters unhealthy for human consumption. *See* Code §§ 28.2-804 through -807. The statutes further contemplate an abatement of rent if oyster grounds become polluted, Code § 28.2-627, and allow for the possibility of harvesting and "relaying" of oysters to cleaner grounds, *see* Code §§ 28.2-800, -811.

Pollution from various sources has plagued oyster growers for more than a century. A lessee who is granted a lease under Code § 28.2-603 and related statutes assumes the risk that the waters surrounding the leased grounds will be insufficiently pure to permit the direct harvest of shellfish from them. The limited rights the petitioners acquire when leasing state-owned bottomlands dooms their takings claim. The respondents did not interfere with the limited property rights the petitioners have under the leases and, therefore, their takings claim fails as a matter of law.[3]

---

[3] The petitioners fault the circuit court for citing and relying on federal law, rather than Virginia law. The federal cases the circuit court cited, however, reference applicable state constitutional provisions or cases. Consequently, we can discern no ground for reversal on that basis.

II. PRIOR TAKINGS CASES DEALING WITH DIFFERENT PROPERTY INTERESTS DO NOT CONTROL OUR DISPOSITION OF A TAKINGS CLAIM INVOLVING A LEASE OF STATE-OWNED BOTTOMLANDS.

The petitioners rely on a number of cases in support of their position: *AGCS Marine Ins. Co. v. Arlington Cty.*, 293 Va. 469 (2017); *Livingston*, 284 Va. 140; and *Hampton Rds. Sanitation Dist. v. McDonnell*, 234 Va. 235 (1987). In *AGCS*, the insurer for a grocery store sought to recoup insurance payments made when sewage overflows damaged the inventory of the grocery store. 293 Va. at 473-74. We concluded that such overflows constituted a public use, the personal property that was damaged as a result was recoverable, and the trial court erred in declining to grant the insurer leave to amend. *Id.* at 486-96. In *Livingston*, the Virginia Department of Transportation failed to maintain a relocated stream and instead "elected to use" nearby residential developments as "makeshift storage sites for excess stormwater." 284 Va. at 159. We concluded that the improvements at issue constituted a public use, and that the damage to the plaintiff's personal property was compensable. *Id*. at 160. Finally, in *McDonnell*, we rebuffed a number of challenges to an award for damage to private property when a bypass valve, operating as designed, poured excess sewage onto an adjacent landowner's property. 234 Va. at 241-42. Arguments advanced by the Commonwealth included a claim that sovereign immunity barred recovery, that the statute of limitations applied, and that the plaintiff had failed to prove his damages with sufficient particularity. *Id.* at 238-42. None of those cases involved an oyster lease under Code § 28.2-603 and the limited rights conferred by such a lease. In addition, the landowners in those cases had a right to exclude floodwaters or sewage from their property. The lessees here have no right to control the water that flows over their oysters. The nature of the property right at stake here differs from the property right at issue in *Livingston*, *AGCS*, and *McDonnell*, and it compels a different outcome.

10

The petitioners also rely on *Ballard Bros. Fish Co.*, 200 Va. 667. In that case, we held that the physical destruction or physical removal of the oysters due to a dredging operation did invade a property right conferred by a state lease, and was, therefore, compensable. *Id.* at 673. Lessees have a right to prevent others from physically taking or destroying their oysters or oyster beds. The right to avoid physical confiscation or destruction of the oysters, however, differs from an asserted right to raise them in favorable environmental conditions. That right was not at issue in *Ballard*, and it is not included in the rights conferred by the leases in this case.

CONCLUSION

We will affirm the judgment of the circuit court.[4]

*Affirmed.*

---

[4] The briefs raise the possibility of other avenues of redress, such as trespass or nuisance, or other forms of non-compensatory relief, like the citizen suit provisions of the Clean Water Act. 33 U.S.C. § 1365. We express no opinion on the viability *vel non* of alternative avenues for relief.